Submitted September 27, 2016, reversed and remanded February 1, petition for review allowed April 13, 2017 (361 Or 350)

In the Matter of L. B. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. J. M.,
*Appellant.*

Lane County Circuit Court
14525J;
Petition Number 14525J01;
A161858

388 P3d 1199

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Valerie Colas, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Flynn, Judge, and DeHoog, Judge.

**DEHOOG, J.**

Mother appeals a juvenile court judgment changing the permanency plan for her son, L, from reunification with parent to adoption. The juvenile court determined that, despite reasonable efforts by the Department of Human Services (DHS) to reunify L with mother, mother had not made sufficient progress to make it possible for L to safely return home. *See* ORS 419B.476(2)(a) (requiring that inquiry when a child's case plan is reunification at the time of the permanency hearing). The court also determined that there were no compelling reasons under ORS 419B.498(2)(b) for DHS to delay filing a petition to terminate mother's parental rights. On appeal, mother challenges both determinations. First, mother argues that the court erred in determining that she had made insufficient progress, because she had completed all required services and had improved her parenting skills. Second, mother asserts that the juvenile court erred in determining that no compelling reasons to defer termination proceedings were present. Mother made those same arguments with regard to L's half-sister, A, in a companion case, *Dept. of Human Services v. S. J. M.*, 283 Or App 367, 369, 388 P3d 417 (2017) (*S. J. M. I*).[1] In that case, we concluded that the juvenile court had not erred in determining that mother had made insufficient progress for A to return home, but that the court had erred in its compelling-reasons determination. In light of our conclusions in *S. J. M. I*, and for the reasons that follow, we likewise conclude in this case that the juvenile court did not err in determining that mother had not made sufficient progress for L to safely return home, but that the court erred in concluding that compelling reasons under ORS 419B.498(2)(b) were not present. Accordingly, we reverse and remand.

We begin with our standard of review. Mother has not asked us to exercise our discretion to review this case *de novo*, nor is this an exceptional case warranting *de novo* review. *See* ORS 19.415(3)(b) (providing court with discretion to conduct *de novo* review in equitable cases); ORAP 5.40(8)(c) (*de novo* review is appropriate only in exceptional

---

[1] The juvenile court held A's permanency hearing together with the hearing for L. The cases were not consolidated on appeal.

cases). Accordingly, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's disposition and assess whether, when so viewed, the record is legally sufficient to permit the outcome. *See Dept. of Human Services v. N. P.*, 257 Or App 633, 639-40, 307 P3d 444 (2013).

In *S. J. M. I*, we described the statutory framework governing permanency hearings and set forth in some detail the relevant facts and procedural history of this case. *See* 283 Or App at 371-78. We restate those matters here only to the extent necessary to provide context for our analysis, and provide supplemental details specific to L as necessary.

Mother gave birth to L in June 2011.[2] In September 2013, mother began dating Bosch, and the two later began living together. In September 2014, while caring for L, Bosch punished L by striking him on the buttocks hard enough to cause significant bruising. As a result of that incident, DHS petitioned the juvenile court to take jurisdiction over L, alleging (1) that mother lacked the parenting skills to safely parent L, (2) that she had failed to adequately supervise L, and (3) that she had failed to protect L despite being aware that he had been physically abused by mother's live-in partner. Following a contested hearing in December 2014, the juvenile court took jurisdiction as to the first and third allegations, placed L in relative foster care with his maternal aunt, and ordered reunification with parent as the primary case plan for L.

In January and February 2016, approximately 15 months after placing L in foster care, the juvenile court held a permanency hearing in accordance with ORS 419B.470(2). At the hearing, DHS asked the court to change L's case plan from reunification to adoption. Mother objected to the change.

As we explained in greater detail in *S. J. M. I*, by the time of the permanency hearing, mother had engaged in various services that the juvenile court had ordered and had succeeded in improving her parenting skills. *See* 283 Or App at 371-72. The evidence at the permanency hearing

___

[2] L's father, Nolan, is not a party to this appeal.

also showed that mother had consistently engaged in weekly therapy with L and had attended supervised visits with him.

As we also noted, however, mother still exhibited signs that she was not yet ready to safely parent her children. *See id.* at 372. Among other things, mother had married Bosch since her children had been removed from her care and was living with him at the time of the permanency hearing. *See id.* at 374. According to DHS, mother continued to prioritize her relationship with Bosch over the best interests of her children, by, for example, advocating for therapeutic contact between Bosch and L despite the recommendation against such contact by L's therapist, Schnabel, and by expressing her desire to coparent with Bosch. *See id.* at 372. In DHS's view, those inclinations suggested that mother still did not fully understand her protective role. *See id.* Significantly, at the time of the permanency hearing, Bosch continued to struggle with anger issues and had not fully accepted responsibility for his treatment of L. *See id.* at 373-74.

While in substitute care, L had engaged in both individual therapy and family therapy with mother and his foster parents. Schnabel testified at the hearing that L had been traumatized by Bosch and that, although L had shown improvements and was beginning to recover, L remained a sensitive and vulnerable child who suffered from anxiety. According to Schnabel, L would bring up his abuse without prompting and mention "being scared that he got spanked."

Schnabel also testified that L had a positive connection with his foster mother, which had "really helped him feel safe," but acknowledged that mother was also making progress in her relationship with L, by showing "more patience with him, more ability to self-reflect, more ability to kind of wonder with him about his feelings and work on, on supporting him and managing his feelings." Schnabel believed that L felt safe with mother and that he could go to her for comfort. Schnabel also believed that mother was L's primary attachment figure.

As for L's relationship with Bosch, Schnabel testified that he did not believe that it would be in L's best interests

to have contact with Bosch until Bosch gained control over his own emotions. Schnabel explained that he had met with Bosch to explore the possibility of having Bosch work with L in therapy, but that he had decided that such contact between the two was not advisable. Schnabel reached that conclusion after observing that Bosch continued to exhibit a "significant amount of emotional [lability]," and "a significant degree of anger," which caused Schnabel concern regarding Bosch's capacity to work with L positively. Schnabel testified that, although he had advised mother of those concerns, she had advocated for contact between Bosch and L.

Evidence at the hearing showed that L was happy in foster care but that he had special needs. For example, L struggled with behavioral issues, had a significant speech impediment, and had a medical condition that required regular doctor visits.

The juvenile court entered a permanency judgment changing the permanency plan for L from reunification with parent to adoption. The judgment reflected the court's determination that DHS had made reasonable efforts to reunify mother with L, but that mother had made insufficient progress to allow L to safely return to her care. The judgment also reflected specific findings as to mother's progress, including findings that she continued to prioritize her relationship with Bosch over the best interests of L, that she lacked an awareness of the risks posed by Bosch, and that she had yet to recognize the role her own conduct had played in causing L to come into care. The court further determined that there were no compelling reasons under ORS 419B.498(2)(b) to defer filing a petition to terminate mother's parental rights. Mother now appeals that judgment and assigns error to the court's determinations that she had made insufficient progress for L to safely return home and that compelling reasons to defer termination did not exist.

We first address mother's challenge to the juvenile court's determination that she had made insufficient progress. As in *S. J. M. I*, mother asserts in this case that she participated in all recommended services and that the evidence at the hearing showed that her parenting skills had improved. *See* 283 Or App at 381. As a result, she contends

that the record does not support the court's determination that she had made insufficient progress. DHS likewise adheres to its arguments from *S. J. M. I. See id.* DHS's response is that the evidence shows that, even though mother had made meaningful progress, she remained unable to protect L from Bosch and did not have a home separate from Bosch to which L could safely return. Thus, in DHS's view, the court correctly determined that mother had not made sufficient progress under ORS 419B.476(2)(a).

As we explained in *S. J. M. I*, mother's participation in services and corresponding progress as a parent are not dispositive—what matters under ORS 419B.476(2)(a) is whether, after giving the highest priority to a child's health and welfare, the juvenile court could reasonably conclude that the child's parent has (or has not) ameliorated the bases of jurisdiction such that the child can safely return home. *See* 283 Or App at 381-82 (a parent's completion of all required services does not compel the conclusion that the parent has made "sufficient progress" under ORS 419B.476(2)(a)). Here, the evidence presented at the permanency hearing regarding mother's progress as to L—and the insufficiency of the progress mother had made—is the same as the evidence of mother's progress as to A.[3] Thus, for the reasons that we rejected mother's argument in *S. J. M. I* regarding her progress as to A, we reject mother's argument that the court erred in determining that she had not made sufficient progress as to L. *See id.*

We turn to mother's argument that the juvenile court erred in determining that there were no compelling reasons for DHS to delay filing a termination petition and proceeding with adoption efforts. Again, both mother and DHS reprise the arguments that they made in *S. J. M. I. See id.* at 382-83. In brief, mother argues that, because she had made meaningful progress as a parent and was willing to engage in any necessary additional services, the record

---

[3] To the extent that there is a difference, we note that the evidence was arguably stronger that mother had not ameliorated the bases of jurisdiction as to L. That is because, unlike A, L was the direct victim of abuse by Bosch. Thus, mother's inability to recognize and prevent the risk that Bosch presented arguably exposed L to a greater threat than A.

establishes the presence of a compelling reason under ORS 419B.498(2)(b)(A),[4] which, mother contends, deprived the juvenile court of its authority to change L's permanency plan to adoption. Mother alternatively argues that, under ORS 419B.498(2)(b)(B), her bond with L constituted a compelling reason with the same effect. And, as in *S. J. M. I*, DHS's response is twofold. *See* 283 Or App at 383. DHS's first contention is that the record does not support the determination that either mother's progress or the bond she shares with L is a compelling reason within the meaning of ORS 419B.498(2)(b). Stated differently, DHS argues that there *is* evidence to support the court's determination that there were *no* compelling reasons to defer termination proceedings. Second, DHS raises the argument that we rejected in *S. J. M. I*, that the determination that the juvenile court must make under ORS 419B.476(5)(d)—as to whether there is a compelling reason under ORS 419B.498(2)(b) to defer termination proceedings—does not constrain the court's authority to change a child's case plan from reunification to adoption. *See id.* at 383-92 (construing ORS 419B.476(5)(d) and ORS 419B.498(2)(b) in light of their respective texts, contexts, and legislative history). Our conclusion in *S. J. M. I*, that a compelling reason to defer filing a termination petition precludes a change of plan to adoption, controls here. *See id.*

Turning our attention, then, to DHS's first argument—that the evidence supports the juvenile court's compelling-reasons determination—we agree with mother that the court erred in determining that her participation and progress in services ·was not a compelling reason to

---

[4] That statute requires DHS to file a petition to terminate parental rights under certain circumstances unless,

"(b) There is a compelling reason, which is documented in the case plan, for determining that filing such a petition would not be in the best interests of the child or ward. Such compelling reasons include, but are not limited to:

"(A) The parent is successfully participating in services that will make it possible for the child or ward to safely return home within a reasonable time as provided in ORS 419B.476(5)(c); [or]

"(B) Another permanent plan is better suited to meet the health and safety needs of the child or ward, including the need to preserve the child's or ward's sibling attachments and relationships[.]"

ORS 419B.498(2).

defer termination proceedings.[5] Like the court's determination under ORS 419B.476(2)(a), the court's compelling-reasons determination under ORS 419B.498(2)(b) relied on essentially the same record as to each child. It is true that L is several years older than A and was removed from his mother's care as a toddler rather than as an infant. It is also true that, unlike A, L exhibited direct and ongoing consequences of his abuse, such as anxiety and lingering fear. Finally, unlike A, L had special behavioral, therapeutic, and medical needs.

As in A's case, however, the record is devoid of evidence connecting L's circumstances or needs to a desirable permanency timeline or to any projected timeline for mother to become a safe resource for L. As with A, there is no evidence to support the conclusion that, given L's specific permanency concerns, it would be unreasonable to give mother additional time to participate in services before moving forward with termination proceedings and adoption efforts. *See S. J. M. I,* 283 Or App at 392-94. Nor is there evidence showing that mother faced any specific barriers—such· as incarceration, significant substance-abuse or mental-health issues, or anything else—that would unreasonably prolong L's stay in foster care in light of his particular permanency needs. *See id.* Thus, despite any arguable differences between L's and A's circumstances, the record in L's case is equally insufficient to support the juvenile court's implicit determination that mother's successful participation in services would not enable L to return home within a reasonable time.

In light of the foregoing, the record does not support the juvenile court's determination that there were no compelling reasons for DHS to defer filing to terminate mother's parental rights as to L—or the court's corresponding decision to change the permanency plan for L from reunification with parent to adoption—and the court, therefore, erred in changing that plan.

Reversed and remanded.

---

[5] We note that, although DHS argues that mother's participation to date in services is both insufficient to allow L to safely return home and inadequate to constitute a compelling reason to defer termination proceedings, DHS does not contend that mother is not "successfully participating in services" within the meaning of ORS 419B.498(2)(b)(A).